523 A.2d 728

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John A. NELSON, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 15, 1986.

Decided April 3, 1987.

Reargument Denied June 23, 1987.

Dennis V. Williams (Court-appointed), Erie, for appellant.

Michael Veshecco, Dist. Atty., Frank J. Scutella, Asst. Dist. Atty., Erie, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

The appellant, John A. Nelson, was convicted by a jury of murder in the first degree and of possession of an instrument of crime. Following further deliberation, the jury decided that imposition of the death sentence was appropriate, having found the aggravating circumstance of torture. After denying the appellant's post-trial motions, the trial court formally imposed the judgment of sentence of death for the murder; and also sentenced him to a term of imprisonment of from one to two years for the companion crime. There followed this direct appeal to this Court pursuant to section 722(4) of the Judicial Code, 42 Pa.C.S. § 722(4).

In the early evening of February 14, 1983, John A. Nelson was released from a hospital after having spent about three days there for problems of alcoholism. Later that same night he killed his wife, Sara Nelson, while subjecting her to

a sequence of brutal assaults in the basement of a certain business establishment. He struck her on the head with the claw end of a hammer; then stabbed her repeatedly in the chest with a chisel; and finally, strangled her by wrapping an electric cord around her neck. At trial the Commonwealth's medical testimony established the cause of death as being by strangulation.

The record evidence discloses that about 7:00 P.M. on the night in question, prior to the killing, appellant Nelson had gone to a local bar and engaged in conversation with one David Fuller, an ex-policeman. In that conversation, according to Fuller's testimony at trial, the appellant remarked that he was angry with his wife and inquired as to the penalty for murder. Fuller further testified that the appellant did not appear to be intoxicated during this conversation.

John Nelson left the bar and went to his wife's residence where he was admitted by his stepdaughter, Ms. Dina. In the opinion of Ms. Dina, the appellant was not under the influence of alcohol when he arrived. Sara Nelson was home and did meet with her husband. About 8:00 P.M., Mrs. Nelson agreed to drive her husband to a certain beauty parlor. It was in the basement of the beauty parlor that he subjected her to the brutal, fatal attack that ended her life. Thereafter, he removed Mrs. Nelson's car to another location; and then telephoned his stepdaughter, representing that he was again looking for his wife. A short time later, however, he told at least three friends or acquaintances that he had killed his wife.[1] Around 11:00 P.M. the same night the appellant called the local police and confessed to having killed his wife. After being placed in police custody, and after receiving the required *Miranda* warnings, he twice more stated to the police that he had killed his wife. Prior to trial the appellant filed a motion

---

1. These admissions were made to Ms. Lottie Boyles, George Shoemaker and David Zanni.

seeking to suppress his statements to the police, but that motion was denied.[2]

During trial appellant sought to convince the jury that he was so intoxicated on the night of the killing that his actions were not deliberate and premeditated and that he did not possess a specific intent to take his wife's life. In this context, he attempted to establish that he was so afflicted by the curse of chronic, severe alcoholism that his mind had become impaired to the point of being incapable of committing a premeditated homicide or of forming a specific design to kill. The only evidence adduced by the defense in support of this theory of diminished mental capacity was testimony provided by appellant himself and testimony supplied by his sisters, stressing that his hospitalization prior to the killing had been for the treatment of alcoholism. The defense did not offer expert medical testimony to establish the extent to which his alleged alcoholism had impaired his mental faculties. Defense counsel argued to the jury that the homicide could not rise any higher than murder in the third degree based upon the assertion of mental incapacity due to alcoholism. The appellant also argued in the alternative that he killed his wife while in a heat of passion brought on by a marital dispute during which she struck him with a hammer.

The jury's verdict in this case makes it clear that they rejected the appellant's allegations of diminished mental capacity or conduct while in a heat of passion, and that they believed the evidence established an intentional malicious killing. In deciding that imposition of the death penalty was appropriate, the jury expressly accepted the prosecution's theory that the homicide was committed by means of torture and found that there were no outweighing mitigating circumstances.

Before this Court, the appellant raises numerous challenges; some are directed at the guilt stage of his trial but most are concerned with the sentencing phase of the proceedings.

2. In this appeal the appellant does not challenge the suppression ruling relating to the incriminating statements made to the police.

 Our review of this case must start with the question of whether the record evidence was sufficient to sustain the verdict of first-degree murder returned by the jury. *Commonwealth v. Wallace,* 500 Pa. 270, 455 A.2d 1187 (1983); *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982). Section 2502(a) of the Crimes Code, 18 Pa.C.S. § 2502(a), states that "[a] criminal homicide constitutes murder of the first degree when it is committed by an *intentional killing*" (emphasis added). The phrase "intentional killing" is defined as a "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). This Court has held that a "willful, deliberate and premeditated killing" is one where the actor has a specific intent to bring about the death of the victim. *Commonwealth v. Meredith,* 490 Pa. 303, 309, 416 A.2d 481, 484 (1980); *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976); *Commonwealth v. Jones,* 355 Pa. 522, 50 A.2d 317 (1947). The test by which we must determine the sufficiency of the evidence is whether, accepting as true all of the Commonwealth's evidence and all reasonable inferences arising therefrom upon which, if believed, the fact-finder could reasonably have based its verdict, such evidence and inferences are sufficient in law to establish the elements of the crime in question beyond a reasonable doubt. *Commonwealth v. Bradley,* 481 Pa. 223, 392 A.2d 688 (1978), *cert. denied* 440 U.S. 938, 99 S.Ct. 1286, 59 L.Ed.2d 498 (1979); *Commonwealth v. Malone,* 444 Pa. 397, 281 A.2d 866 (1971).

 Under the testimony presented at trial, the Commonwealth's evidence was unusually impressive in establishing the specific intent to kill. The element of specific intent is one that may be proven from the circumstances surrounding the event. *Commonwealth v. Paquette,* 451 Pa. 250, 301 A.2d 837 (1973). As we noted in *Commonwealth v. Meredith, supra:*

Where one does not verbalize the reasons for his actions, we are forced to look to the act itself to glean the intentions of the actor. Where the intention of the actor

is obvious from the act itself, the finder of fact is justified in assigning the intention that is suggested by the conduct. *If a deadly force is knowingly applied by the actor to the person of another, the intent to take life is as evident as if the actor stated the intent to kill at the time the force was applied.* (Emphasis added.) 490 Pa. at 311, 416 A.2d at 485.

Here, appellant admitted causing the death of his wife to individuals even before his arrest on these charges. Thereafter, during custodial interrogation, he again confirmed the fact that he brought about the termination of his wife's life. Thus the fact that he was the cause of the death is amply supported by the testimony presented. The circumstances surrounding the event reflect with equal clarity his intent at the time to bring about the death of his spouse. Having first assaulted his wife with a hammer and then a chisel, and being unsuccessful in extinguishing her life, appellant then left the basement, went upstairs and secured an electric cord and returned to the basement where he effectively used the cord to accomplish his purpose. From this sequence of events, the jury was certainly justified in concluding that the assault was designed to terminate the life of the unfortunate victim. *See, e.g., Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985). We are satisfied that the evidence produced by the Commonwealth provided ample basis for the jury's determination that the killing was willful, deliberate and premeditated.

██ Notwithstanding the legal sufficiency of the Commonwealth's evidence to sustain the jury's verdict of first-degree murder, the appellant asserts that the verdict was against the weight of the evidence.[3] In support of that

---

3. Unlike the challenge of legal sufficiency of the evidence, the complaint that the verdict was against the weight of the evidence requires an assessment of the credibility of the testimony offered by the Commonwealth. *Commonwealth v. Brantner,* 486 Pa. 518, 522 n. 2, 406 A.2d 1011, 1013 n. 2 (1979); *Commonwealth v. Farquharson,* 467 Pa. 50, 60, 354 A.2d 545, 550 (1976). It is a rule of this Commonwealth that an appellate tribunal should not entertain a challenge to the weight of the evidence since their examination is confined to the "cold record." *Commonwealth v. Pronkoskie,* 498 Pa. 245, 445 A.2d

proposition he argues that, given his evidence concerning the effect of his alcoholism on his mental capacity, the jury should have found that his mind was so impaired that it could not form a specific intent to kill. It is true that in Pennsylvania diminished mental capacity may be a defense to a charge requiring a specific intent. *Commonwealth v. Zettlemoyer, supra; Commonwealth v. Weinstein,* 499 Pa. 106, 451 A.2d 1344 (1982); *Commonwealth v. Brantner,* 486 Pa. 518, 406 A.2d 1011 (1979); *Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976). However, the appellant's reliance upon that theory in this case is without merit. Even assuming, arguendo, that the appellant's evidence concerning his chronic alcoholism and its effect, consisting solely of testimony from him and his sisters, could have justified a finding of diminished mental capacity, the jury was not compelled to accept this testimony or to make such a finding. It is a fundamental rule of law that a jury may believe any, all or none of a party's evidence. *E.g., Commonwealth v. Stoyko,* 504 Pa. 455, 475 A.2d 714 (1984). Even had the appellant presented expert medical testimony to establish that his mental capacity had been diminished by chronic alcoholism and that the infirmity affected his actions at the time of the killing, the jury would not have been obliged to accept such testimony. *Commonwealth v. Walzack, supra.*

■ As a further argument that the verdict was against the weight of the evidence, the appellant asserts that the testimony indicated he killed his wife in a "heat of passion" brought on by a marital dispute, and that with such evidence the jury could have returned a verdict of voluntary manslaughter. It is true that extended provocation brought about by stress, anger and hostility caused by marital problems can provide grounds for a verdict of voluntary manslaughter instead of murder. *Commonwealth v. Shaver,* 501 Pa. 167, 460 A.2d 742 (1983). However, in the instant case the "heat of passion" defense rested upon the

1203 (1982); *Commonwealth v. Farquharson, supra; Commonwealth v. Paquette,* 451 Pa. 250, 301 A.2d 837 (1973). However, where the penalty of death is imposed we will consider such a complaint.

jury's acceptance of appellant's trial version of the events. The weight and credibility of that testimony was for the trier of fact to determine. *Id.; Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976). And, as previously noted, it was within the province of the fact-finder to believe all, some or none of the appellant's testimony. *Commonwealth v. Stoyko, supra; Commonwealth v. Shaver, supra.*

The appellant's arguments concerning the weight of the evidence were, of course, first raised before the trial court in his post-trial motions, and were rejected by the trial judge. The trial judge was able to observe the demeanor of the witnesses as they offered their evidence and was satisfied that the jury's verdict was justified. A jury's resolution of the facts should not be disturbed unless the failure to do so would be tantamount to a miscarriage of justice. *See, e.g., Bohner v. Eastern Express, Inc.*, 405 Pa. 463, 175 A.2d 864 (1961); *Lupi v. Keenan*, 396 Pa. 6, 151 A.2d 447 (1959); *Frank v. W.S. Losier & Co., Inc.*, 361 Pa. 272, 64 A.2d 829 (1949). Such would be the case where the quality and/or quantity of the evidence clearly does not support the verdict reached. *See Commonwealth v. Vogel*, 458 Pa. 200, 321 A.2d 633 (1974). Clearly such a situation is not presented in this appeal.

The appellant next raises as a ground for a new trial the fact that the trial judge, at the beginning of the defense's case during the guilt stage of the proceedings, refused to grant the motion of defense counsel for a recess prior to calling the appellant to the witness stand. The motion was made about 4:00 P.M. on a Monday, in the midst of trial, and sought to have the proceedings adjourned until the following morning, purportedly to give defense counsel additional time to determine whether or not his client would testify. We note that defense counsel had assumed the representation of his client long in advance of trial; we also note that counsel had advised his client relating to his right to testify on his own behalf, and further stated that he had advised his client that, in counsel's judgment, he should, in

this case, testify. Moreover, counsel and his client had the entire weekend prior to the Monday in question to further consider whether the client would testify. In denying the motion for the 4:00 P.M. adjournment, the trial judge took the position that the time had come for the defense to make its final decision as to whether the appellant was going to testify. When the appellant took the witness stand after the adverse ruling, he was questioned on direct examination solely about matters of his personal background and events prior to the killing. That part of his testimony was concluded about 4:35 P.M., at which point court was adjourned for the day. Thus the effect of the refusal to grant the requested adjournment merely forced the defense to make the decision it had been considering for an extended period prior to that moment.

■ Contending here that the denial of the recess was a violation of his right to confer with counsel as guaranteed by the Sixth Amendment of the Federal Constitution, the appellant relies on the decision of the United States Supreme Court in *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). That case, however, does not support the appellant's contention. *Geders* upheld the right of a criminal defendant to confer with his counsel during a recess *which had been called by the trial judge;* the case does not address the question of the defendant's right *to have a recess called.* It is within the sound discretion of the trial judge to control the course of trial. *Commonwealth v. Dress*, 354 Pa. 411, 47 A.2d 197 (1946). There was no question in the instant case that the defense had ample opportunity to explore their options and that they were not forced to make a hasty decision. Moreover, the appellant has not suggested how the denial of the recess prejudiced him. It is therefore apparent that this assignment of error is totally without merit.

■ It also follows that the appellant's related contention, that trial counsel was ineffective in not including the recess denial as a ground in his post-trial motions, must fail as well. Counsel is not ineffective for failing to assert a

baseless claim. *Commonwealth v. Williams,* 500 Pa. 226, 455 A.2d 632 (1983); *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977).

 The appellant next complains that his trial attorney was ineffective in failing to comply with Pa.R.Crim.P. 305(C)(1)(b), which requires the defense to give the Commonwealth pre-trial notice of an intention to offer at trial a claim of mental infirmity. This argument must also be rejected as a ground for a new trial. Despite the apparent failure of defense counsel to comply with the above procedural requirement, the trial court permitted the defense to claim diminished mental capacity, to present evidence in support of the claim, and to argue the matter to the jury for their consideration. Therefore, we cannot ascertain how, if at all, the appellant was actually prejudiced by the procedural omission; his brief to this Court provides us with no help in that regard. Before a defendant on direct appeal is entitled to further inquiry under a theory of ineffective assistance of trial counsel, it must appear that counsel's omission or improper commission was, in some way, prejudicial to the interests of the defendant. *Commonwealth v. Ford,* 491 Pa. 586, 421 A.2d 1040 (1980); *Commonwealth v. Wade,* 480 Pa. 160, 389 A.2d 560 (1978).

 Still maintaining that he was not effectively represented during the guilt stage, the appellant further avers that trial counsel failed to seek pre-trial discovery from the Commonwealth. In support of this argument the appellant's brief simply states that: "it is *alleged and believed* that the Commonwealth was in possession of substantial medical evidence which would relate to the defendant's mental or physical condition." (Emphasis added.) Upon the record before us in this appeal there is no way of knowing whether trial counsel did or did not attempt to secure such pre-trial discovery; nor is there any way of knowing from the appellant's brief what, if any, medical evidence the Commonwealth may have had in its possession. In providing this Court with nothing more than a bare allegation or statement of belief to support the argument,

the appellant would have us consider a claim in the abstract. That we will not do. *Commonwealth v. Floyd*, 506 Pa. 85, 484 A.2d 365 (1984).

■ The appellant also complains that his defense counsel made no attempt, during the guilt phase of the trial, to present any expert medical testimony concerning the impact of his alcoholism on his mental capacity. However, the appellant makes no assertion here that there was a medical witness who would have offered testimony favorable to his defense of diminished mental capacity. Consequently, this assertion of ineffective assistance of counsel is also without merit. *Commonwealth v. Floyd, supra.* As a final challenge to the effectiveness of counsel's assistance during the guilt stage, the appellant contends that counsel's closing argument fell short of required standards. Our review of counsel's efforts in that regard discloses no such failure.

Having concluded that the Commonwealth's evidence in this case was legally sufficient to sustain the jury's verdict of first-degree murder, and having rejected the arguments upon which the appellant relied for the grant of a new trial, we turn now to the appellant's assertions regarding the sentencing phase of the proceedings against him.

In urging us to vacate the sentence of death, the appellant first directs our attention to the torture element of the case. He asserts that section 9711(d)(8) of the Sentencing Code, 42 Pa.C.S. § 9711(d)(8), which makes torture an aggravating circumstance upon which a sentence of death can be based, is unconstitutionally vague. He further asserts that the trial judge's charge to the jury concerning torture was prejudicially inadequate; and that the Commonwealth's evidence was not legally sufficient to prove that the killing of Mrs. Nelson was accompanied by torture. The appellant also complains that his trial counsel was ineffective in not demurring to the Commonwealth's proof of torture as an aggravating circumstance, and for not objecting to the trial judge's charge relating to torture.

 Ordinarily the failure of trial counsel to timely raise these objections would constitute a waiver and therefore preclude a consideration of these issues on the merits. *E.g., Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). It would then be incumbent upon appellant to show that those omissions constituted ineffective assistance of counsel. *Commonwealth v. McNeil,* 506 Pa. 607, 487 A.2d 802 (1985); *Commonwealth v. Miller,* 494 Pa. 229, 431 A.2d 233 (1981); *Commonwealth v. Gay,* 489 Pa. 17, 413 A.2d 675 (1980). However, in capital cases we have relaxed the traditional waiver concepts because of the uniqueness of the penalty involved, and permit an assessment of the alleged error on its merits. *See, e.g., Commonwealth v. Pirela,* 510 Pa. 43, 507 A.2d 23 (1986); *Commonwealth v. Pursell, supra; Commonwealth v. Stoyko, supra; Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700, *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984); *Commonwealth v. Zettlemoyer, supra; Commonwealth v. McKenna,* 476 Pa. 428, 383 A.2d 174 (1978). Moreover, in this instance such an inquiry is facilitated since the issues raised do not depend upon facts which are not part of the record.[4]

Section 9711(d) of the Sentencing Code enumerates ten categories[5] of circumstances which are characterized as aggravating and hence warrant imposition of the death penalty for first-degree murder. In this case the Commonwealth relied solely on subsection 8 for the aggravating circumstance to justify the penalty of death. That subsection provides that the death penalty may be appropriate where "[t]he offense was committed by means of torture." The record of the sentencing proceeding reflects that the

4. Frequently, in the context of complaints of ineffectiveness of counsel, an evidentiary hearing is required to establish the factual predicate upon which the legal issues will depend. Here, it is a pure question of law which eliminates a necessity for remand for a further hearing.

5. As a result of an amendment by Act 1986–87, signed July 7, 1986, section 9711(d) was increased by two additional aggravating circumstances. However, as noted in the text of this opinion, there were only ten enumerated categories at the time of trial.

court's entire instruction relating to this aggravating circumstance was as follows:

Now, the Crimes Code [sic] defines aggravating circumstances. For purposes of this particular case only the following matters, if proven, can constitute aggravating circumstances, and in this case there is only one item in which the Commonwealth is contending under the Crimes Code [sic], that there is an aggravating circumstance, and that is that the offense was committed by means of torture. T.T. Vol. V, pp. 198–199.

Appellant notes that the word "torture", as used in subsection 8, is given no definition by the Sentencing Code and that the trial court made no effort to further define that term for the jury in this case. He argues that this was an insufficient instruction that constituted a denial of due process.

A well recognized aspect of the void-for-vagueness concept is the requirement that standards be sufficiently precise to guide the court and jury. *Godfrey v. Georgia*, 446 U.S. 420, 428–29, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398 (1980) (opinion of Stewart, J., announcing judgment of the Court, joined in by Blackmun, Powell, and Stevens, JJ.); *Proffitt v. Florida*, 428 U.S. 242, 255–56, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913 (1976) (opinion of Powell, J., announcing judgment of the Court, joined in by Stewart and Stevens, JJ.); *Gregg v. Georgia*, 428 U.S. 153, 192–94, 96 S.Ct. 2909, 2934–35, 49 L.Ed.2d 859 (1976) (opinion of Stewart, J., announcing judgment of the Court, joined in by Powell and Stevens, JJ.). In this instance the question is whether by merely utilizing the word "torture", the General Assembly has made sufficiently clear the requisite degree of culpability for the imposition of the death penalty under this particular aggravating circumstance.

The test to be applied is whether the prohibited conduct is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. *See generally* Note, *The Void-for-Vagueness Problem in the Supreme Court*, 109 U.Pa.L.Rev. 67 (1960).

The word torture is defined in Webster's Third New International Dictionary (unabridged) as "the infliction of intense pain (as from burning, crushing, wounding) to punish or coerce someone; torment or agony ..., anguish of body or mind; excruciating agony...." As noted by this Court in *Commonwealth v. Pursell, supra,* 508 Pa. at 238, 495 A.2d at 196, the general "meaning of such a term [torture] is a matter of common knowledge,...." The word torture is generally understood as "the infliction of a considerable amount of pain and suffering on a victim which is unnecessarily heinous, atrocious, or cruel manifesting exceptional depravity." *Id.,* 508 Pa. at 239, 495 A.2d at 196. Thus we agree with the Commonwealth that the word "torture", even with its ductile quality, does not present a vagueness question of constitutional proportions. *Commonwealth v. Pursell, supra.* Thus we reject the contention that subsection 8 is unconstitutionally vague because of its use of the word "torture" without further elaboration of that term.

However, this conclusion does not end our inquiry into the instant complaints. It is the responsibility of the courts to "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Godfrey v. Georgia, supra,* 446 U.S. at 428, 100 S.Ct. at 1764–65.[6] The sentencing phase under section 9711 is only applicable after there has been a finding of murder in the first degree. The aggravating circumstance provides an additional element to the intentional killing which justifies the ultimate sentence. Thus subsection 8 of section 9711 must of necessity require more than a mere intent to kill.[7] Implicit in subsection 8 is

---

6. Arbitrary and capricious sentencing can only be avoided where the issues are clearly identified and the controlling law explained. *E.g., Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). The function of elucidating the relevant legal principles belongs to the trial judge, and the failure to perform this function deprives the defendant of a fair trial. *Commonwealth v. Bishop,* 472 Pa. 485, 372 A.2d 794 (1977).

7. The law has long recognized the distinction between the intent to inflict pain and the intent to kill. In those cases where death resulted

the requirement of an intent to cause pain and suffering in addition to the intent to kill. There must be an indication that the killer is not satisfied with the killing alone.

The critical distinction between *Commonwealth v. Pursell, supra,* and the case at bar is that in *Pursell* the trial judge gave the jury a charge which contained a sufficiently guiding definition of the word "torture." That charge conveyed to the jurors the idea that the "torture murderer", besides having an intent to kill, has an *additional* specific intent—" 'an intention to inflict pain, suffering or both pain and suffering.' " 508 Pa. at 239 n. 13, 495 A.2d at 197 n. 13 (quoting charge of trial judge). The central element in our decision in *Pursell* is that we upheld the charge given by the trial judge regarding the meaning of "torture." Although we recognize the definitional problem that confronted the trial court in the instant case, we must also observe that the trial judge in *Pursell* was faced with the same problem and yet succeeded in providing a charge which satisfied due process requirements.

 Having concluded that the jury charge given during the sentencing phase of the instant case was prejudicially deficient, we must also conclude that trial counsel was ineffective in his assistance when he failed to make a timely objection to that charge.

For the reasons set forth herein, we are constrained to vacate the death sentence imposed upon the appellant, and remand the case to the court below for the imposition of a life sentence.[8]

from the infliction of torture, legislatures deemed it appropriate to equate it with the specific intent to kill. *E.g., State v. Morales,* 120 Ariz. 517, 587 P.2d 236 (1978); *People v. Steger,* 16 Cal.3d 539, 128 Cal.Rptr. 161, 546 P.2d 665 (1976); *Townsend v. People,* 107 Colo. 258, 111 P.2d 236 (1941); *State v. McKenzie,* 186 Mont. 481, 608 P.2d 428 (1980); *State v. Bentford,* 39 N.M. 293, 46 P.2d 658 (1935). Here, where the infliction of torture is being utilized as an aggravating circumstance after a finding of a specific intent to kill, the additional element of the intent to inflict torture provides the heinousness necessary to warrant the extreme penalty.

8. As noted previously, the appellant has raised numerous objections with respect to the sentencing phase of his trial. In view of our

LARSEN, J., files a concurring and dissenting opinion.

McDERMOTT, J., files a concurring and dissenting opinion in which PAPADAKOS, J., joins.

PAPADAKOS, J., files a concurring and dissenting opinion in which McDERMOTT, J., joins.

LARSEN, Justice, concurring and dissenting.

I dissent to the vacation of appellant's judgment of sentence of death and imposition of a life sentence; I join that portion of the majority opinion affirming appellant's convictions.

*By anybody's definition,* appellant tortured his victim, and committed the offense of murder of the first degree by means of torture. As Justice Papadakos observes, we gave body to the meaning of the word "torture", and approved the trial court's elaboration of that term, in *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985), wherein we held that what is intended to be included are those murders of the first degree where the actual commission of the offense included such concurrent heinous, atrocious or especially cruel acts as to set the murder apart from those murders of the first degree not attended by aggravating circumstances, *i.e.,* the "conscienceless or pitiless crime" which causes inordinate or extreme pain and suffering, from which the intent to cause such pain and suffering can be presumed. *Id.,* 508 Pa. at 239, 495 A.2d at 197.

While I believe it would be *preferable* to charge the jury more fully regarding the aggravating circumstance of "committed by means of torture" along the lines adopted and approved in *Pursell,* I do not believe that the failure of the trial court to give the more comprehensive instruction is an absolute necessity in all cases, nor do I believe that the minimal instruction on "torture" in the instant case requires that we vacate the sentence of death.

disposition of this appeal it is unnecessary to address his remaining arguments.

Our standard of review of a sentence of death is established by the Sentencing Code which provides that *we shall affirm* the sentence of death (assuming the absence of trial errors) *unless we determine that:*

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) *the evidence fails to support the finding of an aggravating circumstance* specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S.A. § 9711(h) (emphasis added).

I do not find that the sentence of death was the product of passion, prejudice or any other arbitrary factor, and it is not excessive or disproportionate to the penalty imposed in similar cases involving torture of the victim. The record also discloses sufficient evidence to support the finding of an aggravating circumstance specified in subsection (d), namely subsection (d)(8) as that subsection has been interpreted by this Court in *Pursell.* As Justice Papadakos states, "Appellant inflicted a considerable amount of pain and suffering on his victim," by acts that were especially "heinous, atrocious or cruel, manifesting exceptional depravity, and the acts themselves prove that Appellant intended to torture his victim to death." Concurring and Dissenting op. at 286. Accordingly, we are directed by statute to affirm the sentence of death in this case.

Perhaps in the abstract, or in another case, the evidence would not support the aggravating circumstance of "torture" where the trial court gave no elaboration on the meaning of that term to the jury and the jury was permitted to find such aggravating circumstance on sparse or speculative evidence of "torture." This is not such a case, however. It is a case where the jury could have, and did, apply its common understanding of the word "torture" to the heinous facts before it to arrive at a fully supported

determination that the offense had been committed by means of torture.

As the United States Supreme Court has stated in a related context, it "is neither possible nor desirable for a person to whom the state entrusts an important judgment to decide in a vacuum, as if he had no experiences." *Barclay v. Florida,* 463 U.S. 939, 950, 103 S.Ct. 3418, 3425, 77 L.Ed.2d 1134 (1983). If a court failed to instruct a jury on the legal meaning of negligence in a civil case, and the jury found a defendant negligent who had driven his car at 100 m.p.h. through a crowded pedestrian crossing against a red light, I do not believe we would require a new trial simply because the jury instruction regarding "negligence" was at its "bare bones minimum." We could legitimately review the record and find any inadequacy in the instruction to be harmless. So too in the instant case, where the jury correctly applied its common understanding of the word "torture" and found the existence of that aggravating circumstance (§ 9711(d)(8)), and where the record demonstrates sufficient evidence to support that aggravating circumstance as interpreted in *Pursell.*

Alternatively, as I must be bound by the majority's position regarding the adequacy of the court's instruction on the aggravating circumstance, I would not remand for imposition of a life sentence. Rather, I would vacate the sentence of death and remand for a new sentencing proceeding, for the reasons set forth in my concurring and dissenting opinion in *Commonwealth v. Williams,* 514 Pa. 62, 522 A.2d 1058 (1987).

McDERMOTT, Justice, concurring and dissenting.

I join in the affirmance of appellant's conviction. However, I must dissent from the decision to vacate the sentence of death.

To kill by "means of torture", 42 Pa.C.S. § 9711(d)(8), does not mean that one must intend to kill only by torture. What is proscribed is an intentional killing that is inflicted by means of intense pain, "the infliction of a considerable

amount of pain and suffering on a victim which is *unnecessarily* heinous, atrocious, or cruel manifesting exceptional depravity." *Commonwealth v. Pursell*, 508 Pa. 212, 238, 495 A.2d 183, 196 (emphasis added). A killing by "means of torture" does not require that torture be the reason for the employment of painful means. The means of killing are evidence of intention that when proved are subsumed by the intention to kill, and where that intention is manifested by the unnecessary infliction of pain the torture proscribed by the statute may be considered in imposing sanction.

What is proscribed is the infliction of pain that accompanies the intention to kill. It cannot matter to the victim that his killer is a bungler, unfamiliar with the state of the art, or did his best with the means at hand. If the means employed inflict pain as defined in *Pursell, supra,* the killer ought not be heard to say that the pain was a mere by-product of his killing.

PAPADAKOS, J., joins in this concurring and dissenting opinion.

PAPADAKOS, Justice, concurring and dissenting.

I join that portion of the majority opinion which affirms Appellant's conviction of murder of the first degree, but must dissent from the vacation of the sentence of death and imposition of a life sentence in this case.

We have already found that the application of our Death Penalty Statute's aggravating circumstance eight (42 Pa. C.S. § 9711(d)(8)), "the offense was committed by means of torture," by a jury in its determination of whether a convicted murderer should receive the penalty of life or death is not dependent upon the recitation of any particular formula or the incantation of specific magic words, because, in our view, we feel the meaning of such a term is a matter of common knowledge so that an ordinary man would not have to guess at what was intended. *Commonwealth v. Pursell*, 508 Pa. 212 at 238, 495 A.2d 183 at 196 (1985).

We also indicated that if a jury concluded that the means of torture are present "we can believe, without a reasonable doubt, that the user of such means intended to torture his or her victim to death." *Pursell*, 508 Pa. at 239, 495 A.2d at 197. The majority's present attempt to discredit the trial court's charge at the sentencing hearing because it did not point out that a specific intent to cause pain and suffering was necessary or that the death had to be caused by acts separate and distinct from the torture" (Maj. opinion p. 280), in reality, only seeks to undermine *Pursell's* teachings and the more basic assumption that underlies *Pursell*, i.e., that the term is a matter of common knowledge.

The court's charge clearly set out the statutory language and that the jury had to find that the Commonwealth's evidence on the subject was credible beyond a reasonable doubt. The statutory language itself, "the offense was committed by means of torture," simply and sufficiently conveys to the ordinary man that the killing had to be caused by torturous methods. Not to repeat this information by any other formula as suggested by the majority, is not fatal to the charge, it only represents non-redundancy.

Apparently, the majority feels that such repetition is mandated by virtue of the facts which led to the untimely death of Appellant's victim. As I read the majority opinion, it would have us believe that the brutal assault on Appellant's wife with the claw hammer, stabs by a chisel, and choking with an extension cord, were separate, distinct episodes unrelated in time or purpose. This is illogical.

In *Pursell*, we found that torture was more than present, inferred same by the number of blows, manual strangulation, asphyxiation and continued traumatization of the body after death, which acts were held to be part of the same act of killing.

Here, Appellant dragged his wife into the basement of a beauty salon, assaulted her with a hammer and chisel, and when that didn't finish off her life, went upstairs and secured an electric cord and returned to the basement

where he effectively used the cord to accomplish his purpose, her death by means of torture.

I believe that a common understanding of this sequence of events would indicate that Appellant inflicted a considerable amount of pain and suffering on his victim, which was unnecessarily heinous, atrocious or cruel, manifesting exceptional depravity, and that the acts themselves prove that Appellant intended to torture his victim to death.

I would conclude that the record contains substantial evidence to support the jury's finding of aggravating circumstance 8 and that, in light of *Pursell*, the subsection is constitutionally valid and that the charge was sufficient for the jury to understand the law on this issue.

I, therefore, join the Concurring and Dissenting Opinion authored by Mr. Justice McDermott.

Accordingly, I would affirm the conviction of murder of the first degree and affirm the sentence of death.

McDERMOTT, J., joins this concurring and dissenting opinion.