549 A.2d 553

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Florencio ROLAN, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 20, 1988.

Decided Oct. 18, 1988.

Janis Smarro, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Alan Sacks, Philadelphia, Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

4

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

OPINION OF THE COURT

PAPADAKOS, Justice.

We are presently required to review the conviction of murder of the first degree and the death sentence of Florencio Rolan pursuant to 42 Pa.C.S. § 9711(h)(1).[1] Appellant was arrested and charged with criminal homicide, robbery and possession of an instrument of crime, for the death of Paulino Santiago, who was shot to death in an abandoned house in the City of Philadelphia.

Appellant was tried in the Court of Common Pleas of Philadelphia County, before a jury with the Honorable George J. Ivins, Senior Judge, presiding. On May 19, 1984, the jury returned its verdicts of guilty of murder of the first degree and possession of an instrument of crime, and not guilty of robbery. On May 21, 1984, a separate sentencing hearing was conducted, following which the same jury determined that Appellant be sentenced to death. Post-verdict motions were argued and denied, and the trial court sentenced Appellant to death on the murder of the first degree conviction and to a concurrent term of one to two years imprisonment for the weapons offense. This automatic appeal followed.

It being the practice of this court in death penalty cases to review the sufficiency of the evidence, we begin our review of this case by a discussion of whether the record evidence was sufficient to support the verdict of murder of the first degree[2] as returned by the jury. See *Common-*

1. 42 Pa.C.S. § 9711(h) provides:
   (h) Review of death sentence.—
   (1) A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules.

2. The Crimes Code defines murder of the first degree as:
   "[a] criminal homicide ... committed by an intentional," i.e. "willful, deliberate and premeditated killing."
   18 Pa.C.S. § 2502(a), (d).

*wealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Jermyn,* 516 Pa. 460, 533 A.2d 74 (1987); *Commonwealth v. Sneed,* 514 Pa. 597, 526 A.2d 749 (1987); *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985).

The evidence presented at trial, together with all reasonable inferences in favor of the Commonwealth, discloses the following. At approximately 8:30 p.m. on May 13, 1983, Appellant and Paulino Santiago, the victim, were arguing with one another at the corner of 17th and Wallace Streets in Philadelphia. The argument was over money and a woman named "Betsy." Betsy was Appellant's former lover who had recently moved out of Appellant's house and had taken up residence in the victim's house (her new lover). The victim's brother, Francisco Santiago, was present at this argument and overheard the exchange between the men.

At the conclusion of this argument, Appellant entered a nearby house and a few minutes later came looking for the victim. Appellant was now carrying a .22 caliber rifle and he found the victim and brother Francisco in an abandoned house on Wallace Street, where the two had entered to use the bathroom. As Appellant entered the abandoned house, he found both brothers and, pointing the loaded rifle at his victim, said, "Give me the money" and immediately fired one shot into Paulino Santiago's chest from a distance of about six feet. Appellant then quickly exited through the house's back door and ran down an alley.

The police were summoned and they arrived at the vacant house about 9:00 p.m. A search of the premises and areas adjacent thereto revealed the loaded .22 caliber rifle lying in the rear alleyway. The autopsy performed the next day

identified the gun shot wound as the cause of death. A warrant for the arrest of Appellant was issued on May 14, 1983, the day following the shooting, but he was not apprehended until November, 1983, when he was finally located in New York City. Upon being apprehended, Appellant waived extradition and was returned to Philadelphia.

▇▇▇ Taking all of these circumstances together, a jury could conclude beyond a reasonable doubt that Paulino Santiago's death was a homicide. From the nature of the injury, a jury could infer that the homicide was intentional and malicious. Since the armed Appellant came looking for his victim, the jury could conclude that the killing was premeditated. Finally, the jury could accept the eyewitness testimony of the victim's brother and conclude beyond a reasonable doubt that Appellant committed the crime. Accordingly, we are satisfied that sufficient evidence exists in this record to support the jury's verdict of murder of the first degree, and dismiss Appellant's sufficiency challenge.[3]

▇▇▇ Appellant argues that the trial court abused its discretion when it denied his request to recuse itself from this case when Appellant brought it to the attention of the trial court that it had presided over another trial on different charges against Appellant. In the previous trial, Appellant was found guilty of murder by a jury with Judge Ivins presiding and, on appeal, this Court reversed the sentence and conviction and remanded the matter for a new trial. *Commonwealth v. Rolon*, 486 Pa. 573, 406 A.2d 1039 (1979). According to Appellant, the fact that the trial judge presided over another trial against him, resulting in a conviction, which was reversed by this Court, may have been a source of embarrassment to the trial court and

---

3. Appellant argues to us that insufficient evidence was submitted to establish that the killing was intentional. This is meritless. A jury may properly infer an intent to kill from the use of a deadly weapon on a vital part of the body and it could be so inferred here. *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728 (1987); *Commonwealth v. Terry*, 513 Pa. 381, 521 A.2d 398 (1987); *Commonwealth v. Pronkoskie*, 498 Pa. 245, 445 A.2d 1203 (1982).

somehow compromised the learned trial court's impartiality towards Appellant. This argument is meritless.

Appellant makes much of the fact that Judge Ivins presided in another murder trial over him and speculatively concludes that what the judge learned about him nine years before somehow biased the court. Such an allegation, devoid of any supporting facts, cannot be sufficient evidence of prejudice, bias, or partiality, and we reject Appellant's contrary argument. Appellant's further conclusion, that the trial court may have been embarrassed by his ruling at the former trial which predicated a reversal, is even more speculative and must similarly be rejected.

The record clearly reveals that on more than one occasion, the trial court assured Appellant that his earlier role would have no effect on his ability to preside over this jury trial (N.T. 4/19/84 p. 7–8; 5/1/84 7, 10). Moreover, this proceeding, like the other murder trial, was conducted before a jury, the ultimate fact-finder of guilt or innocence and determiner of life or death.

We detect nothing from our review of the record to indicate that the trial court's rulings improperly removed factual issues from the jury or unjustly guided their determinations on guilt or the penalty. The mere allegation of the trial judge's former experience with this Appellant, with nothing more, is insufficient to raise any inference of bias and the trial judge did not abuse his discretion in denying the motion to recuse.

Appellant's next argument concerns an allegation of prosecutorial misconduct in reference to a statement made during closing argument which it is argued improperly commented upon Appellant's failure to testify. As we noted in *Commonwealth v. Crawley,* 514 Pa. 539, 526 A.2d 334 (1987), a prosecutor is not permitted to comment adversely upon a defendant's refusal to testify on the merits of the charge against him. Such comments obviously compromise the privilege against self-incrimination and the defendant's constitutional presumption of innocence. *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983).

8

■ Turning to this case, Appellant points to the following language the prosecutor delivered during his close to the jury:

"[MR. DiDONATO:] I would like to go through the law now. The facts were not that long, I don't think that there is any doubt in your mind, that you know Florencio Rolan was the man that shot and killed Paulino Santiago. *You have heard absolutely no evidence that would indicate otherwise, none whatsoever.*"

(N.T. 5/17/84, p. 80.)

Trial counsel immediately objected to this statement and moved for a mistrial, arguing that the statement improperly referred to the fact that the defendant had not testified. The court denied the objection and request for a mistrial, but instructed the jury as follows:

Ladies and gentlemen of the jury, you are to note: The comment involving production of evidence, you are to completely disregard that. It has no place in this case as it presently stands. So what the district attorney has said must, without question, be disregarded.

Even though I will tell you this again, comments of counsel, whatever time they may make it, have no control over your understanding and your recollection. It is your recollection alone and nothing else. But this bordered a little bit on the legal aspects. That is why I am telling you to completely, absolutely, and unequivocally disregard the comments.

(N.T. 5/17/84, p. 82)

It is well established that a prosecutor must have reasonable latitude in presenting a case to the jury and must be free to present his or her arguments with "logical force and vigor." *Commonwealth v. D'Amato,* 514 Pa. 471, 526 A.2d 300 (1987). When read in the context of the closing, the prosecutor's argument does not seem to us to reflect adversely upon the Appellant's decision not to testify. The statement was a simple declamation that all the evidence lead unerringly to the conclusion that Appellant had committed the murder. Such an argument has already been

approved by this Court, *Commonwealth v. Crawley*, 514 Pa. 539, 526 A.2d 334 (1987), and merely represents an instance of the prosecutor's unquestioned right to argue to the jury that the evidence establishes the defendant's guilt. *Commonwealth v. D'Amato*, 514 Pa. 471, 526 A.2d 300 (1987); *Commonwealth v. Capalla*, 322 Pa. 200, 185 A. 203 (1936).

In any event, the trial court's immediate and adequate cautionary instruction cured any possible prejudice Appellant may have suffered from the prosecutor's comment.

Next, Appellant argues that trial counsel rendered ineffective assistance of counsel during voir dire proceedings in not posing specific questions to venire persons who had indicated a willingness to apply the death penalty under appropriate circumstances, and in agreeing to excuse for cause all those venire persons who indicated that they had objections to considering the imposition of the death penalty under appropriate circumstances and in appropriate cases.

Our cases clearly indicate that ineffectiveness claims are measured by two components. First, counsel's performance is evaluated in light of its reasonableness if it is determined that the underlying claim is of arguable merit. Once it is determined that trial counsel's actions were unreasonable, we require that the defendant demonstrate how the ineffectiveness prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

As to those individuals who were excused from the venire panel, their discharge was predicated upon answering the following questions:

"Now ladies and gentlemen of the jury panel, I pose the following questions to all of you: Do any of you have any moral or philosophical objections to considering the imposition of the death penalty under appropriate circumstances or in an appropriate case?"

In the jury selection process in this case, the trial court used a general questioning of each of three panels with Appellant's agreement as provided by Pa.R.Cr.P. 1106(e).

The above quoted question was asked of each of the three panels used during voir dire and twenty-five (25) veniremen responded positively to the inquiry. Following consultation with the trial court, prosecutor, trial counsel and Appellant, it was agreed to excuse these twenty-five (25) veniremen because of their indicated rejection of the application of the death penalty.

Appellant now argues that his trial counsel was ineffective for agreeing to the dismissal of these veniremen. This argument must fail because it overlooks the fact that, following an extensive consultation with trial counsel, Appellant himself agreed to the dismissal of these veniremen and so stated on the record. Since it was Appellant's decision to forego any further questioning into the veniremen's views on the death penalty, he cannot now be heard to complain that his trial counsel was ineffective for following Appellant's own deliberate choice. *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1984). To have followed such a course under these circumstances would have been meritless and counsel cannot be deemed ineffective for failure to assert a meritless claim. *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986); *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985).

Appellant also argues that his trial counsel was ineffective for failing to ask further questions of the non-excused veniremen on their ability to impose the death penalty under appropriate circumstances. As we have made clear, the purpose of *voir dire* is to empanel a fair and impartial jury which will apply the law in accordance with the instructions of the trial court. *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987). All of the veniremen who did not raise a concern with their ability to apply the death penalty under appropriate circumstances also indicated an ability to follow the law as given to them by the court and to render a fair and impartial decision. These veniremen satisfied the purpose of the *voir dire* questioning and qualified themselves as fair and impartial jurors.

Under such circumstances, we do not find that counsel's tactical decision not to ask further questions was a dereliction of his duties as trial counsel or that his performance was unreasonable. *Pierce.* Our review of the record indicates that the general questions posed of veniremen and the specific questions posed of individual panel members were sufficient to insure that of the individuals who were selected all were willing to apply the law and find the facts conscientiously. This is what the law guarantees a defendant, *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), and we are satisfied that such an impartial panel was selected. The fact that trial counsel may not have posed specific questioning as to the parameters of a prospective juror's willingness to vote for a sentence of death in an appropriate case under these circumstances does not justify the conclusion that counsel failed to assure that a fair and impartial jury was selected. Thus, while the issue of further questioning of veniremen may be of arguable merit, we must conclude that counsel's performance was reasonable under these circumstances and, therefore, must reject Appellant's ineffectiveness claim.

Appellant also charges two instances of ineffective assistance of trial counsel during the penalty phase. First, he argues that his trial counsel was ineffective in stipulating to the introduction into evidence of his prior criminal record and for not objecting to the way the prosecutor characterized this prior record in his closing to the jury.

At the penalty phase, the prosecutor attempted to establish as an aggravating circumstance that Appellant had a significant history of felony convictions involving the use or threat of violence to the person. 42 Pa.C.S. § 9711(d)(9). The prosecutor proposed to submit as evidence of this aggravating circumstance, four prior felony convictions including a 1980 voluntary manslaughter conviction, a 1976 aggravated assault conviction, and two prior burglaries. It was agreed by trial counsel that Appellant was convicted of

these felonies and he stipulated to their introduction into evidence.

Appellant further argues that when the prosecutor argued to the jury that these four convictions could be considered as establishing a significant history of felony convictions involving the use or threat of *violence* to the person, he misled the jury because the burglaries are not such crimes.

Appellant argues that the trial court compounded the harm when it did not instruct the jury as to which. prior felony convictions involved the use or threat of violence to the person.

Thus, Appellant's basic complaints revolve around the admissibility and consideration of his prior burglary convictions.

At common law, a burglar was generally defined as one who "by night breaketh and entereth into a mansion-house, with intent to commit a felony." The law regarded this crime as a very heinous offense because of the threat for harm that it represented to the inhabitants of the mansion-house and because it represented a *forcible* invasion and disturbance of the right of habitation which all people had a right to expect in a civilized society. Because of the great public policy involved in shielding the citizenry from being attacked in their homes and in preserving domestic tranquility, the law punished burglars with the penalty of death.[4]

Thus, the common law recognized burglary as a crime involving the use or threat of violence to the person by its very nature. It was also recognized, however, that this common law definition was an inadequate safeguard because it punished only for nighttime intrusions into homes. As the need developed to protect people from the threat of violence in other situations, the law responded and the scope of the offense was gradually enlarged by judicial interpretation and legislation. See, Toll, Pa. Crimes Code

4. See, Blackstone's Commentaries on the Law, Book IV, pp. 223–228.

Annotated pp. 397–400 (1974). Since people occupied various types of buildings and structures, in both day and night, it was forcefully argued that their right of peaceable habitation without fear of non-privileged intrusions and bodily harm extended to all these places as well, in both day and night. See, *La Fave v. Scott*, Criminal Law, pp. 715–717 (1983). See also, *Commonwealth v. Procopio*, 200 Pa. Superior Court 226, 188 A.2d 773 (1963) (entry into building); *Commonwealth v. Hellner*, 160 Pa. Superior Ct. 158, 50 A.2d 512 (1947) (entry into warehouse); *Commonwealth v. Lindie*, 147 Pa. Superior Ct. 335, 24 A.2d 39 (1942) (entry into smokehouse); *Commonwealth ex rel. Foster v. Ashe*, 125 Pa. Superior Ct. 533, 189 A. 804 (1937) (entry into barn or outhouse); *Commonwealth v. Landres*, 84 Pa. Superior Ct. 119 (1925) (entry into factory); *Commonwealth v. Stefanczyk*, 77 Pa. Superior Ct. 27 (1921) (entry into freight-car); and *Commonwealth v. Carson*, 166 Pa. 179, 30 A. 985 (1895) (time of entry immaterial).

Under our current Crimes Code, a burglary is defined as follows: "A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein...." 18 Pa.C.S. § 3502(a). The common law definition has been *expanded* to include entries into buildings, occupied structures, separately secured parts of buildings or structures and separately occupied parts of buildings and structures. Our law now recognizes that non-privileged entries into *any* of these areas is a burglary because such entries pose a threat of violence to persons. This threat of violence to persons is so great that the Legislature has graded the offense as a felony of the first degree (18 Pa.C.S. § 3502(c)) which carries a punishment of ten to twenty years imprisonment.

Grading a burglary as a felony of the first degree is totally consistent with the theory that the unprivileged entries into buildings and structures where people are likely to be found is a clear threat to their safety. We recognized

this fact long ago when this Court, speaking through Mr. Justice Maxey (later Chief Justice) said: "Every burglar is a potential assassin and when his felonious purpose encounters human opposition his *intent to steal* becomes an *intent to kill* and any weapon he finds at hand becomes a weapon of murder." (emphasis in the original). *Commonwealth v. Le Grand*, 336 Pa. 511, 9 A.2d 896 (1939); *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958); *Commonwealth v. Moyer*, 357 Pa. 181, 53 A.2d 736 (1947); *Commonwealth v. Elliott*, 349 Pa. 488, 37 A.2d 582 (1944). Every robber or burglar knows when he attempts to commit his crime that he is inviting dangerous resistance. He also knows that a later act in the chain of events he inaugurates will be the use of deadly force against him on the part of his selected victim. *Moyer; Redline.* It is this threat of violence to persons that has prompted the Legislature into expanding the definition of burglary to include all those entries without privilege into places where people might be present.

Moreover, in the Uniform Firearms Act, Act of December 6, 1972, P.L. 1482, No. 334, § 1, effective June 6, 1973, 18 Pa.C.S. § 6101 et seq., burglary is specifically defined as a crime of *violence*. Persons who commit crimes of violence using illegal firearms may be punished in addition to the punishment imposable for the underlying violent crime. 18 Pa.C.S. § 6103. Such statutory provisions spell out in capital letters the Legislature's continuing concern for protecting the general populace from threats of violence to their persons.

Along these lines, if a person can demonstrate that the building or structure was abandoned at the time of the illegal entry, a successful defense to a burglary prosecution may be offered. 18 Pa.C.S. § 3502(b). This necessarily follows from what we have said, because where a building or structure can be shown to be abandoned, there can be no threat of encountering another person and putting him in fear of violence.

■ The foregoing discussion convinces us that the crime of burglary has always been and continues to be viewed as a crime involving the use or threat of violence to the person.[5] Appellant's contrary arguments must be rejected. Trial counsel was not ineffective in stipulating to Appellant's prior record of burglary convictions, in not objecting to the prosecutor's reference to them during his closing argument or in not objecting to the trial court's reference to them in its charge to the jury. Because counsel cannot be ineffective for failing to assert a meritless issue, Appellant's ineffectiveness claims must be dismissed.

■ Appellant also argues that the evidence he submitted concerning his character, family background and mental state at the time of the crime were sufficient to establish mitigating circumstances (e)(2) and (e)(8).[6] The jury was presented with the evidence and chose, in its discretion, to reject it as was its right. Under our legislative scheme, it is exclusively a jury question whether any mitigating factor exists and where the jury concludes upon its review of the evidence that none can be found, it is acting within its

---

5. To the extent that we discussed the propriety of using burglary convictions to establish aggravating circumstance 9 in *Commonwealth v. Christy*, 511 Pa. 490, 515 A.2d 832 (1986), we note that our discussion therein was *obiter dictum*. We disposed of the argument that Christy was entitled to a new trial because the jury heard impermissible evidence and because, in *Christy*, *whatever* the jury heard did not prejudice him since the jury did not find the existence of aggravating circumstance 9. Accordingly, our discussion of what kind of evidence may be used to establish the aggravating circumstance was totally unnecessary to our consideration and disposition of the issue as presented to us and is viewed only as non-binding *dictum*.

In the case at bar, however, the jury did find the existence of evidence to support a finding of aggravating circumstance 9 and the issue alluded to in *Christy* is squarely before us and ripe for our consideration.

6. 42 Pa.C.S. § 9711(e)(2) and (e)(8) provide:

(e) Mitigating circumstances.—Mitigating circumstances shall include the following:

(2) The defendant was under the influence of extreme mental or emotional disturbance.

(8) Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.

exclusive function and authority and its decision is conclusive. Accordingly, Appellant's argument must be rejected.

■ Finally, pursuant to our statutory obligation to review death cases to determine whether the imposed sentence of death is "excessive or disproportionate to the penalty imposed in similar cases," (42 Pa.C.S. § 9711(h)(3)(iii)), we have conducted an evaluation of all convictions of murder of the first degree prosecuted under the Act of September 13, 1978, P.L. 756, No. 141, 42 Pa.C.S. § 9711, aided by the comprehensive study prepared at our order by the Administrative Office of Pennsylvania Courts (AOPC), (see, *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984)). That review reveals no excess or disproportionality in the sentence imposed in this case compared to the sentence imposed in other first degree murder cases where the evidence could support an aggravating circumstance such that the Appellant had a "significant history of prior felony convictions involving force or threat of violence to the person." 42 Pa.C.S. § 9711(d)(9).[7]

For the foregoing reasons, we sustain the conviction of murder of the first degree and affirm the sentence of death.[8]

NIX, C.J., files a concurring opinion.

ZAPPALA, J., files a dissenting opinion.

7. It is to be noted that where one aggravating circumstance is present and no mitigating circumstances are found, the jury is required to return a verdict of death. 42 Pa.C.S. § 9711(c)(1)(iv). *Commonwealth v. Smith*, 511 Pa. 343, 513 A.2d 1371 (1986); *Commonwealth v. Buehl*, 510 Pa. 363, 508 A.2d 1167 (1986); *Commonwealth v. Beasley*, 504 Pa. 485, 475 A.2d 730 (1984).

Our review of the cases wherein aggravating circumstance 9 was present, and where no mitigating circumstances were present, such being the circumstances of the present case, discloses that a death penalty sentence has been imposed in 4 of 6 cases.

8. The Prothonotary of the Eastern District is directed to transmit the full and complete record of the trial, sentencing hearing, imposition of sentence, and review by this Court to the Governor. 42 Pa.C.S. § 9711(i).

NIX, Chief Justice, concurring.

I agree with the majority's conclusion that you cannot find ineffective assistance of counsel predicated upon counsel's failure to pursue the objection to the exclusion of veniremen due to their reluctance to impose the death penalty. Nevertheless, I am still in disagreement with the decisions in this Commonwealth that permit a death-prone jury to be impaneled in these cases where capital punishment is an available sanction. *See, e.g., Commonwealth v. Peterkin,* 511 Pa. 299, 330, 513 A.2d 373, 389 (1986) (Nix, C.J., concurring).

ZAPPALA, Justice, dissenting.

I am unable to assent to the determination that burglaries are inherently crimes falling within aggravating circumstance (d)(9), as "involving the use or threat of violence to the person."

First, the majority confuses the concepts of "risk" and "threat". The former involves simply a chance or possibility of injury whereas the latter describes more precisely an expression or indication of intention to inflict injury. Even if it is assumed that at common law burglary was considered a serious crime because of the *risk* of violence to persons, it does not follow that burglary necessarily involves a *threat* of violence. Breaking and entering the close of the residence could be accomplished without excessive force, and the felony to be committed therein need not, in contemplation or realization, involve an encounter with the residents (theft for example). Thus the common law burglary could well have been committed without any expression of intention to do injury, although there might be the possibility of such should the resident come upon the burglar.

Second, the expanded definition of burglary contained in the Crimes Code counsels against considering burglary as being, *by nature,* a crime of violence. It is true that the types of structures subject to being burgled has been

broadened to include any that *might* be occupied, but it is not necessary that the structure in fact be occupied. The crime is complete even if the structure is unoccupied and is known to be unoccupied; only complete abandonment is a defense. Put simply, since entering an unoccupied, secured area to commit any crime is now a burglary, the legislature has *de*-emphasized the importance of the risk of harm to persons.

Nor is the majority's notation that the Uniform Firearms Act includes burglary as a "crime of violence" persuasive. More telling, I think, is the fact that the legislature included burglary not in Article B of Title 18, under the heading "Offenses Involving Danger to the Person," but in Article C, "Offenses Against Property." Though a *particular* burglary might ultimately involve danger to the person, I believe the legislature has recognized that burglary by nature is essentially a property crime.

Finally, I am troubled by what I perceive to be a tendency exhibited here and in other cases to expansively construe the language of the aggravating circumstances. It should not be forgotten that the whole purpose of specifically enumerating aggravating circumstances was to *narrow* the type of first degree murder cases in which death would be an appropriate penalty. Especially as to circumstance (d)(9), where the issue is not the nature of the crime being punished but the defendant's criminal history, it is contrary to this limiting purpose to broaden the range of what may be included. Under (d)(9), I believe it was the legislative intention to make the death penalty a possibility only where the first degree murderer had previously engaged in crimes where he had used, or had exhibited an intention to use, violence against a person. To now hold that it is also appropriate where the defendant's prior crimes posed only a risk of violence opens the door too wide, and invites a challenge to the statute as giving too little structure to rationally distinguish capital from non-capital first degree murders.