848 A.2d 918

**COMMONWEALTH of Pennsylvania**

v.

**Malik EL SHABAZZ**

**Petition of Andrea Konow, Esquire.**

**No. 47 EM 2004.**

Supreme Court of Pennsylvania.

March 25, 2004.

*ORDER*

PER CURIAM:

**AND NOW,** this 25th day of March 2004, the Emergency Petition for Stay of Contempt Order is DENIED. This order supersedes this Court's order dated March 24, 2004.

Justice CASTILLE files a Statement in Support of Denial.

Justice BAER files a Concurring Statement.

Justice NEWMAN Dissents with Statement to follow.

Justice CASTILLE, concurring in support of denial.

Before the Court is an "Emergency" Petition to stay the March 23, 2003, order of the Honorable Jane Cutler Green-span, which held Petitioner Andrea Konow, Esquire, in contempt of court after petitioner, an officer of the court, refused a directive to continue with her representation of her client in this capital matter, which is currently being tried before a sequestered jury in Philadelphia County. By explaining why I believe that petitioner has not demonstrated her entitlement to a stay, I hope to provide some guidance to the court below.

Petitioner initially sought a stay from the Superior Court, notwithstanding that she failed to request a stay from Judge Greenspan. The stay was disposed of by the Honorable Richard B. Klein that same day in an order which I shall quote in its entirety since it sets forth the salient facts and the course of action which should now be permitted to occur

> According to the Petition, defendant El Shabazz "sucker punched Attorney Goodman in the head" during the course of his trial for capital murder and other charges. Fred R. Goodman, Esquire, was co-counsel in the case with fellow public defender Andrea Konow, Esquire.

> While Mr. Goodman was allowed to withdraw, Ms. Konow was directed by the trial judge, Judge Jane Cutler Green-span, to continue with the case. Ms. Konow claimed that she was traumatized by the assault on Mr. Goodman, had fear of her client, and was unable to be a zealous advocate for El Shabazz. Although she had participated in the guilt phase of the case, Ms. Konow also said that she was primarily to try the penalty phase of the case if necessary. The experienced trial judge directed Ms. Konow to continue with the case. When she refused, the trial judge held her in civil contempt and directed that Ms. Konow be taken into

custody until she purged the contempt by continuing with the case. This Emergency Petition followed.

Because any problems with representation are directly caused by the action of the defendant himself, it is improper to grant a mistrial at this point. Otherwise, any time a case seems to be going badly a defendant can act out and try again later with a different jury. Therefore, Judge Greenspan was correct in directing the trial to proceed, taking what has been acknowledged by all counsel as reasonable steps to insure the safety of counsel by restraining the defendant.

This Court Orders the following

1. The trial court Order of contempt shall only be stayed until 10:00 a.m. on Wednesday, March 24, 2004.

2. Ms. Konow shall be released from custody until 10:00 a.m. on Wednesday, March 24, 2004:

(a) To allow Ms. Konow to formally ask for a stay from the trial court and to file an appeal to give this Court jurisdiction.

(b) To allow Ms. Konow to seek review with the Pennsylvania Supreme Court.

(c) To allow Ms. Konow to either consult with Mr. Goodman and others to better prepare the defense of the case or to work with Mr. Goodman, should Mr. Goodman decide to reenter his appearance.

3. If Mr. Goodman does not reenter his appearance by 10:00 a.m. on Wednesday, March 24, 2004, and Ms. Konow refuses to go forward with the case, the stay is dissolved and the sanctions for civil contempt shall be reinstated.

Thus, Judge Klein adopted an approach which correctly left options open to the trial judge to resolve this matter in a fashion which would ensure the defendant the type of representation he deserved and vindicate the lawful authority of the court.

Judging from petitioner's pleadings, it appears that she ignored Judge Klein's directive to seek a stay from Judge Greenspan, which not only is reason enough to deny the

instant request, but which also forestalled the possibility of the flexible resolution envisioned by Judge Klein. Instead, petitioner demanded a further stay from this Court. That stay was granted by single-justice order on March 24, 2004, pending further order of the Court, and the Commonwealth now having been given an opportunity to respond, the Petition is before the entire Court.

Petitioner's application fails for numerous reasons, among which are the following. First, the practical effect of granting a stay in this matter, rather than permitting the contempt appeal to proceed in its normal course, will be to continue to tie the hands of the trial judge and inevitably will lead to the declaration of a mistrial, since the jury has been sequestered and unnecessarily inconvenienced already. By tying the judge's hands, the Court would prevent any prospect of a rational solution. There were other measures the trial court might take, as recognized by Judge Klein, which would be foreclosed by granting a stay.

Second, issuing a stay in this case would reward the capital defendant for his misconduct by providing him with an unwarranted new trial—which may very well be the reason he punched one of his lawyers in the face in the first place. Rewarding the defendant for this behavior would fly in the face of this Court's controlling authority in *Commonwealth v. Lester*, 554 Pa. 644, 722 A.2d 997, 1004 (1998) (no abuse of discretion to deny counsel's petition to withdraw after capital defendant punched him; court noted fear that scenario could occur with the defendant *ad infinitum*).

Third, issuing a stay would reward a recalcitrant attorney for flouting her ethical obligation to the court. Rule 1.16(c) of the Rules of Professional Conduct provides that, "when ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." If petitioner truly felt a new and sudden fear of her client charged with the rape and capital murder of a child,[1] and/or felt that she was unprepared to continue in the case,

---

1. If this is truly the case here, counsel may want to consider another line of work.

she could have raised a claim that the court abused its discretion in the regular course—like Lester's lawyer did. Lawyers, who are officers of the court, should not be encouraged to act petulantly or defiantly when confronted with orders with which they disagree. In the rare case where the lawyer feels the matter is one of "principle" sufficient to warrant defiance, she should be prepared to pay the inevitable price of such contempt. To grant a stay would absolve petitioner of the choice at all, and would remove whatever prospect there was of the trial court's order achieving its objective of "coercing" this lawyer to do her job.

Fourth, issuing a stay would also reward petitioner and the Defender Association for employing a litigation strategy—*i.e.,* failing to seek a stay from the trial judge, so that she could explain her order—which has succeeded in preventing this Court from hearing the trial judge's view of the matter, including what might well be crucial and controlling factual findings. We are asked to rule upon this matter without a record and without any statement of view from the trial judge, which alone is antithetical to a reasoned decision.

Finally, issuing a stay here would turn stand our review standard on its head. The order below is presumptively valid. Review of the contempt order would be for an abuse of discretion. Review in a stay posture, however, requires an extraordinarily high showing: the stay applicant must make a strong showing that: (1) she is likely to prevail on the merits; (2) she will suffer irreparable injury without a stay; (3) the stay will not substantially harm other interested parties; and (4) the stay will not adversely affect the public interest. *See Pennsylvania P.U.C. v. Process Gas Consumers Group,* 502 Pa. 545, 467 A.2d 805 (1983). Given that petitioner has not provided this Court with a transcript of the proceeding, or the trial court's view on the matter, she cannot meet this heightened standard—particularly where a discretionary decision is at issue. I do not deny that it is a sad prospect to consider any member of the bar spending time incarcerated for contempt. But, petitioner has always held the key to her release.

The "injury" may easily be "repaired" by attending to her duties as an officer of the Court.

Justice BAER, concurring in support of denial.

I rely upon the factual and procedural history set forth in Mr. Justice Castille's Statement in Support of Denial. I join my esteemed colleague in believing that the Petition for an "Emergency" Stay of the trial court's March 23, 2004 Order filed on behalf of Petitioner, Andrea Konow, Esquire (Petitioner) should be denied because of her failure to seek a stay from the trial judge. I concur also in Mr. Justice Castille's observations that the practical effects of this Court's grant of a stay would be to precipitate what may be an unnecessary mistrial in a capital case to the detriment of most involved, and to reward the defendant for his own egregious misconduct.

I write separately because I decline to assume Petitioner's behavior lacks ethicality or represents petulance. Likewise, I am unwilling to presuppose that this litigation crisis has arisen from a strategy adopted by the Defenders Association of Philadelphia County. This Court obviously never has the opportunity to observe the proceedings, and, in this case, we do not even have the benefit of a record to review. Absent anything but inference, I will presume good faith. I note that our inability to review a record only strengthens my belief that we should not interfere with the distinguished trial judge orchestrating this difficult legal quagmire.

On this basis, I concur.

JUSTICE NEWMAN, dissenting.

I write separately to note my strong dissent to the per curiam Order entered by the Court in the above-referenced matter. As further set forth in this Statement, I firmly believe that this action is ill-advised and will lead to the inefficient administration of justice. In particular, I write to express my disagreement with several points raised by my colleague Mr. Justice Castille in his Statement in Support of Denial.

The Court has rejected the Petition of Andrea Konow, Esq. (Petitioner), to stay the March 23, 2004 Order of the Court of Common Pleas of Philadelphia County (trial court), which held Petitioner in contempt of court. The trial court issued the contempt citation when Petitioner refused to continue with her representation of Malik El Shabazz (El Shabazz), after El Shabazz sucker punched her co-counsel Fred Goodman, Esq. (Attorney Goodman). Because I believe it imprudent to require Petitioner to continue representing El Shabazz in this matter, I must dissent from the majority's decision.

The discrete issue before this Court is simply whether Petitioner, who has expressed personal fear about continuing in this case, should be entitled to remove herself from representing El Shabazz, not the ancillary effects of rendering El Shabazz unrepresented at this stage of trial. In order to establish entitlement to a stay, the Appellant must establish all of the following criteria set forth in *Reading Anthracite Company v. Rich,* 525 Pa. 118, 577 A.2d 881 (1990): (1) strong likelihood of success on the merits; (2) the denial of a stay will cause irreparable harm; (3) the stay will not substantially harm other interested parties; and (4) the stay will not substantially harm the public interest. *See also Pennsylvania P.U.C.* v. *Process Gas Consumers Group,* 502 Pa. 545, 467 A.2d 805 (1983).

Attorney Konow asserts that she will likely succeed on appeal of the contempt Order. She claims that she cannot provide competent representation consistent with Rule 1.1 of the Rules of Professional Conduct, which provides, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation necessary for the representation." In support of her position, she cites a case from Ohio, *State v. Williams,* 99 Ohio St.3d 493, 794 N.E.2d 27 (2003). In *Williams,* the defendant in a capital case punched one of his lawyers, Spiros Cocoves, Esq. (Attorney Cocoves), after the jury returned a guilty verdict. Attorney Cocoves indicated that he was willing to continue as Williams' counsel, and the court adjourned for the weekend. The following Monday,

Attorney Cocoves and co-counsel both filed motions to withdraw. Attorney Cocoves indicated that there had been a breakdown in the attorney-client relationship that jeopardized the defendant's right to effective assistance of counsel. Attorney Cocoves indicated that he was afraid of Williams and that his fear would be communicated to the jury. The trial court denied counsel's motions to withdraw. On appeal, the Supreme Court of Ohio determined that the trial court abused its discretion. It emphasized that in the context of the penalty phase of a capital case, it is particularly important for counsel not to reveal to the jury, through his or her body language, any fear of the defendant.

The Commonwealth relies on this Court's decision in *Commonwealth* v. *Lester*, 554 Pa. 644, 722 A.2d 997 (1999). In *Lester*, the trial of a capital defendant was originally scheduled to begin on July 29, 1991. Lester requested the appointment of new counsel because he had filed a civil suit against his court appointed lawyer. When the court indicated that the trial would proceed, the defendant became disruptive. The court continued the case for two days to allow the defendant and counsel additional time to confer. On July 31, 1991, the court agreed to the appointment of new counsel because it was clear that the defendant intended to disrupt the trial and the court feared that Lester would harm his counsel. When trial began in November 1999, Lester stood up and informed the jury that he had filed a civil suit against his new lawyer. After the jury panel was removed from the courtroom, Lester punched his counsel. The following day, counsel sought permission to withdraw, which the trial court denied. The trial court based its decision, in part, on the fact that it had previously postponed Lester's trial because it feared that Lester would physically harm his original counsel. In light of the recurrent nature of the defendant's disruptive behavior, this Court held that the trial court did not abuse its discretion in denying the request of counsel to withdraw from representation. However, *Lester* is clearly distinguishable from the instant matter because (1) there is no indication in *Lester* that counsel felt that his personal safety was in jeopardy; (2) the assault occurred outside the presence of the jury; and (3) the

defendant in *Lester* had repeatedly engaged in obstreperous behavior, supporting the trial judge's view that such behavior would likely recur.[1]

Requiring Petitioner to return to the courtroom and continue with the representation of El Shabazz will cause greater harm than allowing the stay to remain in place. Assuming, *arguendo*, that El Shabazz is convicted of the crimes charged, he will ultimately raise motions[2] contending that Petitioner rendered ineffective assistance of counsel; how those arguments would not be meritorious strains credulity. In light of Petitioner's assertion that she is not prepared to represent El Shabazz at the guilt stage, requiring her to step into the shoes of Attorney Goodman is an open invitation to raise a good faith claim of ineffectiveness.

My overarching concern in this matter is the efficient administration of justice. I recognize that allowing Petitioner to withdraw from this case would inevitably lead to a mistrial. Although appointing new counsel at this stage would cause delay, it need not necessarily cause inordinate delay. I fear that at some point in the future, long and unnecessary delay will occur, if the PCRA court, this Court, or a reviewing federal court deems a new trial appropriate based on allegations of ineffective assistance of counsel by Petitioner.

As to irreparable harm to Petitioner, it is beyond cavil that losing one's freedom for any period of time is indeed irrepara-

1. The Commonwealth also cites to Rule of Professional Conduct 1.16(c), which provides, "[w]hen ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." However, a trial court's discretion to require an attorney to continue representation of a client is not unfettered. As such, it behooved the trial court to consider Rule 1.1, as discussed above, as well as Rule 1.7(b) which provides that "[a] lawyer **shall not** represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the **lawyer's own interests** ..." (emphasis added).

2. He will not even be able to present these claims for years, having to wait to file a Petition filed pursuant to the Post–Conviction Relief Act, 42 Pa.C.S. §§ 9541, *et seq. See Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 738 (Pa.2002) ("[w]e now hold that, as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review").

ble. Any harm to the Commonwealth would be minimal as it has made no averments that any evidence or testimony will be lost if trial does not immediately continue. The public interest will be better served by ensuring that the defendant receives adequate representation than by requiring the case to go forward under these circumstances. Accordingly, I would have allowed the stay to remain in place.

By allowing Attorney Goodman to withdraw from the case, the trial court recognized that when an attorney who has been assaulted by a client believes that he cannot continue to represent that client effectively, terminating such representation is appropriate. Considering that Petitioner saw the attack on co-counsel and expressed that she was traumatized by the incident, the decision of the trial court to excuse one member of the defense team but not the other is potentially inconsistent. This matter should be subject to thorough review by the Superior Court, and pending such review, Petitioner should not be compelled to return to trial or face incarceration.

In particular, I disagree with certain points raised by Mr. Justice Castille in his Statement in Support of Denial. As an initial matter, I do not believe that under these circumstances, Petitioner's failure to seek a stay in the trial court prevented meaningful review. In light of time restraints and her incarceration, she took the steps most effectively designed to achieve her release. Her attempt to seek relief from the Superior Court was eminently reasonable, and I refuse to assume that this was part of a strategy to euchre the judicial process. Moreover, I am disheartened by the general tenor of the Statement in Support of Denial, which unjustifiably accuses Petitioner and the Defender Association of using the unprovoked assault by El Shabazz as a litigation tactic.

Although the Statement in Support of Denial contends that Petitioner holds "the key to her release," she should never have been put behind the locked door in the first place.